UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HACKENSACK RIVERKEEPER, INC. and
NEW CITY NEIGHBORHOOD
ASSOCIATION, INC.,

        Plaintiffs,

v.

SENECA MEADOWS, INC.; WASTE
CONNECTIONS US, INC.; WASTE
CONNECTIONS OF NEW YORK, INC.; and
WEST NYACK TRANSFER STATION,

        Defendants.

Case No. 7:21-cv-07659-KMK

~~(PROPOSED)~~
CONSENT DECREE

---

    WHEREAS, Plaintiff Hackensack Riverkeeper, Inc. is a not-for-profit environmental organization organized under the laws of the state of New Jersey, whose headquarters are in Hackensack, New Jersey, and whose mission is to protect, preserve, and restore the ecological integrity and productivity of the Hackensack River and its watershed through enforcement, field work, and community action.

    WHEREAS, Plaintiff New City Neighborhood Association, Inc. is a not-for-profit organization organized under the laws of the state of New York, whose headquarters are in New City, New York, and whose mission is to educate residents of New City, New York on the various issues affecting their neighborhood, and to protect and preserve their quality of life.

    WHEREAS, Plaintiffs have alleged that polluted stormwater runoff is being discharged from a scrap metal processing and recycling facility located at 183 Western Highway, West Nyack, NY 10994 ("the Facility") into the waters of the United States, including channels that flow to the Hackensack River, a navigable water of the United States.

    WHEREAS, the Facility operates under Standard Industrial Classification ("SIC") Codes of 5093 and 4212 and therefore any discharge of stormwater associated with activities at the Facility is subject to the General Permit for the Discharge of Stormwater Associated with Industrial Activity ("General Permit") issued by the New York State Department of Environmental Conservation ("DEC"), Permit No. GP-0-17-004.

    WHEREAS, Plaintiffs sent a notice of intent to sue Seneca Meadows, Inc., Waste Connections US, Inc., Waste Connections of New York, Inc. and West Nyack Transfer Station (the "Notice Letter") on June 16, 2021, and filed this action on September 14, 2021, alleging

violations of 33 U.S.C. §§ 1311(a) and 1342 of the Clean Water Act ("CWA") and seeking declaratory and injunctive relief, civil penalties, and reasonable attorneys' fees and costs ("Complaint").

WHEREAS, Plaintiffs alleged in their Complaint and Notice Letter that Seneca Meadows, Inc., Waste Connections US, Inc., Waste Connections of New York, Inc. and West Nyack Transfer Station violated and continue to violate CWA Sections 33 U.S.C. §§ 1311(a) and 1342.

WHEREAS, Seneca Meadows, Inc. ("Defendant" or "Seneca Meadows") is a corporation incorporated under the laws of the State of New York that has an office located at 1786 Salcman Road, Waterloo, NY 13165, and participates in ownership and operation of the Facility.

WHEREAS, on September 30, 2022, Plaintiffs filed a notice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) dismissing Waste Connections US, Inc., Waste Connections of New York, Inc., and West Nyack Transfer Station with prejudice.

WHEREAS, Seneca Meadows denies all of the violations alleged in Plaintiffs' Notice Letter and Complaint.

WHEREAS, without any concession or admission by Defendant that they have violated the Clean Water Act, or any concession or admission by Plaintiffs that Defendant's implementation of the measures listed below will prevent all discharge of polluted stormwater or will assure compliance with the terms and conditions of the General Permit, Plaintiffs and Defendant (collectively "the Parties" or individually "Party") agree that it is in their mutual interest to resolve this matter without the taking of evidence or findings of fact or law, and the Parties would like to avoid prolonged and costly litigation; and

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Defendant of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

**IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:**

**I.   TERM OF CONSENT DECREE**

1. The term "Effective Date," as used in this Consent Decree, shall mean the date upon which this Consent Decree is entered by the Court.

2. Unless an extension is agreed to in writing by the Parties, this Consent Decree shall terminate on November 1, 2024, or through the conclusion of any proceeding to enforce this Decree or until the completion of any payment or affirmative duty required by this Decree, if occurring later than November 1, 2024 (the "Termination Date").

3. The term of this Consent Decree shall run from the Effective Date through the Termination Date (the "Term").

## II. JURISDICTION AND VENUE

4. **Jurisdiction.** Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). Plaintiffs have standing and have complied with the statutory notice requirements under the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2. An actual, justiciable controversy exists between Plaintiffs and Defendant. The requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. § 1365(a).

5. **Venue.** Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the events giving rise to this action occurred at the Facility and in Hackensack River watershed, navigable waters of the United States, that are located within this judicial district.

6. **Consent.** For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant. For purposes of this Decree, Defendant consents to venue in this judicial district.

## III. CONTROL MEASURES AND BEST MANAGEMENT PRACTICES

7. **Compliance with General Permit and Clean Water Act.** Defendants shall operate the Facility and manage stormwater discharges from the Facility in compliance with the terms of the General Permit and the Clean Water Act.

8. **Implemented Additional Control Measures.** Subsequent to Plaintiffs' Complaint and prior to the Effective Date, Defendant has implemented the following additional control measures and best management practices ("BMPs") at the Facility.

    a. Defendant has replaced the witches hat filters at all catch basins at the Facility with StormwateRx's Frontline Drain Inlet Filters.

    b. Defendant has commenced use of an S250 Bobcat with a 72" Bobcat sweeper attachment for conducting sweeping at the Facility. When that unit is being serviced or repaired, Defendant conducts sweeping with a Cat 262D with a Cat 72"sweeper attachment.

    c. Defendant has installed Metalzorb filtration at the outlet of Trench Drain 2.

    d. Defendant has decommissioned the subsurface containment unit ("tank") and catch basin CB-10, including permanently sealing all inlets and outlets to and from the tank and the catch basin, abandoning the tank in place, and placing concrete over the affected area. Defendant has relocated equipment washing that used to occur in the tank/CB-10 area to inside the adjacent buildings and no washing of equipment will be performed outside in the vicinity of the tank. Defendant continues to

undertake other activities at the tank/CB-10 area (preventative and other light maintenance, daily servicing) and the Facility is equipped to clean up any leaks or spills associated with these activities.

e. Defendant has replaced all straw bales at the Facility with Filtrexx SiltSoxx Extreme and ensured that the filter socks surround the entirety of each catch basin and make complete contact with the ground.

f. Defendant has incorporated an additional segment of Metalzorb in the orange weir at Outfall 001 prior to the sampling point.

g. Defendant has instituted a practice of conducting daily sweeping of all paved areas at the Facility as weather permits.

h. Defendant has instituted a practice of disposing of materials collected from daily sweeping operations into the transfer station.

i. Defendant has paved one formerly unpaved area in the northeast section of the Facility, as depicted in Appendix B.

9. **Additional Control Measures.** Defendant will implement the stormwater pollution control measures set forth in Appendix A within thirty (30) days from the Effective Date, unless specified otherwise in Appendix A. Many of these measures are depicted in a site map of the Facility, attached hereto as Appendix B.

10. **Confirmation of New Structural Controls.** Within two (2) weeks of installation of each of the measures set forth in Appendix A, Defendant shall confirm the installation of said measures by submitting digital photos of those measures to Plaintiffs.

11. **SWPPP Amendments.** Within thirty (30) days of the Effective Date, Defendant shall amend the Facility's SWPPP to incorporate any additional changes, improvements, and best management practices set forth in or resulting from this Consent Decree. In addition, within thirty (30) days of the Effective Date, Defendant shall revise the SWPPP's site map to include and label the following features of the Facility:

   a. The size of the Facility in acres.
   b. The location of all receiving waters in the immediate vicinity of the Facility.
   c. The location of MS4 drains receiving the Facility's discharges.
   d. The locations where stormwater flows have significant potential to cause erosion.
   e. The locations where vehicles and machinery are stored when not in use; cleaning and maintenance areas; loading/unloading areas; and the locations of stormwater monitoring points.
   f. The locations of haul and access roads; scrap and waste material storage areas; containment areas; outdoor scrap and waste processing equipment; and areas where materials are sorted, transferred, and stockpiled.

A copy of the amended SWPPP shall be provided to Plaintiffs within ten (10) business days of completion.

12. **Implemented Storm Water Controls.** Defendant shall maintain in good working order all storm water collection and treatment systems currently installed or to be installed pursuant to this Consent Decree and shall continue existing housekeeping measures.

## IV. MONITORING PROGRAM

13. **Inclusion of Outfall 002 in Monitoring Program.** On October 13, 2021, Defendant resubmitted a Notice of Intent to DEC to include Outfall 002 in the Facility's stormwater monitoring program. Defendant shall include Outfall 002 in future stormwater sampling at the Facility until such time as conditions at the Facility under the General Permit allow Defendant to obtain a representative outfall waiver. If Defendant seeks such a waiver during the Term, it shall provide a copy of the request to Plaintiffs contemporaneously with its submission to DEC.

14. **Additional Monitoring of Roof Discharge.** Within one (1) year of the Effective Date, Defendant shall collect and analyze at least one more stormwater discharge from the roof to confirm that the roof discharges do not appear to be a major pollution source. Defendant shall provide Plaintiffs with a copy of the laboratory analysis within thirty (30) days of receipt.

15. **Sampling Points.** The outfall sampling points shall be those described in the SWPPP.

16. **Enhanced Sampling Frequency.** From July 1, 2022, through June 30, 2023, Defendant will collect and analyze storm water discharges from one qualifying storm event per quarter.

17. **Additional Parameters to Monitor.** In addition to the parameters the Facility is required to monitor pursuant to the General Permit and its SWPPP, once during the period of January 1, 2023, through June 30, 2023, Defendant shall analyze the storm water discharge at Outfall 001 for human bacteroides.

18. **Sampling Methodology.** Defendant will take samples at each outfall in a manner that is consistent with the requirements and protocols set forth in the General Permit. Defendant shall report the sample results as part of the stormwater monitoring required by the General Permit.

19. **Recordkeeping.** Defendant will comply with the reporting and recordkeeping requirements of the General Permit. Defendant shall maintain written documentation at the Facility describing all inspections and assessments required under applicable provisions of the General Permit or of this Decree.

20. **Results Sent to Plaintiffs.** Defendant will send to Plaintiffs a copy of every record of an inspection and result of sampling, as required by the General Permit, the Facility's SWPPP, or this Decree, during the Term of this Decree once per each twelve-month

period between July 1 and June 30, no later than August 1 following such period or on the last day during which this Decree is in effect.

21. **Provision of Documents to Plaintiffs.** During each twelve-month period between July 1 and June 30 during the Term of this Decree, Defendant shall provide Plaintiffs with copies of any documents or correspondence submitted to any governmental agency (including uploaded to any government agency-maintained website) related to discharges of pollution from the Facility to waterbodies or sewers of any kind or Clean Water Act compliance regarding the Facility no later than August 1 following such period of submission of such documents or correspondence to said agency. This includes, but is not limited to:

    a. Documents and correspondence related to Defendant's SPDES/NPDES permit coverage at the Facility;
    b. Annual reports including the Annual Certification Report required under the General Permit;
    c. Monitoring or sampling data;
    d. Revisions to the SWPPP;
    e. Data related to discharges of industrial wastewater or industrial stormwater to the sanitary sewer system, if any (at this time Defendant has no such discharges);
    f. Reports of spills or other incidents that may result in discharge of pollutants to a waterbody or sewer; and
    g. Documents relating to inspections conducted by any governmental agency that relate to industrial wastewater or industrial stormwater.

## V.   OVERSIGHT COMPLIANCE

22. **Preparation of Action Plan.** If any of the Facility's storm water sampling results during each twelve-month period between July 1 and June 30 during the Term of this Decree indicate that the analytical results for a particular parameter within that year exceed the applicable benchmark monitoring cutoff concentrations in the General Permit, Defendant agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and considering implementing additional BMPs aimed at reducing levels observed in storm water samples. In furtherance of improving its storm water management practices, Defendant shall prepare a written statement ("Action Plan") discussing:

    a. Identification of any constituent that experienced an exceedance;
    b. Explanation of the possible cause(s) and/or source(s) of the exceedance; and
    c. Responsive actions to improve its storm water management practices, including modified or additional feasible BMPs to be considered to further reduce the possibility of future exceedance(s), and the proposed dates that such actions will be taken. If appropriate, potential responsive actions shall include an end-of-pipe treatment system at the location of Outfall 001 or the replacement of or retrofitting of the grit chamber with media filtration targeted to treat the pollutants of concern.

Such Action Plan shall be e-mailed to Plaintiffs not later than August following each twelve-month period.

23. **Meet and Confer Process.** Upon receipt of the Action Plan, Plaintiffs may review and comment on any identified or omitted additional measures. If requested by Plaintiffs within thirty (30) days of receipt of such Action Plan, Plaintiffs and Defendant shall meet and confer to discuss the contents of the Action Plan and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the benchmark levels. If requested by Plaintiffs within thirty (30) days of receipt of such Action Plan, Plaintiffs and Defendant shall meet and confer and potentially conduct a site inspection within sixty (60) days after the due date of the Action Plan to discuss the contents of the Action Plan and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the benchmark values. If within thirty (30) days of the Parties meeting and conferring, the Parties do not agree on the adequacy of the additional measures set forth in the Action Plan, the Parties shall engage in the dispute resolution procedures pursuant to Section X below.

24. Any concurrence or failure to object by Plaintiffs with regard to the reasonableness of any additional measures required by this Consent Decree or implemented by Defendant shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's stormwater into compliance with applicable water quality criteria or the BAT/BCT requirements set forth in the General Permit.

25. **Annual Site Inspection.** Defendant agrees to grant site access to representatives of Plaintiffs, including consultants acting on its behalf, to inspect the Facility for compliance with the General Permit and the terms of this Consent Decree once during each year the Consent Decree is in effect (a "Site Inspection"). The Site Inspection shall occur during normal business hours and Plaintiffs shall provide Defendant with as much notice as possible, but at least twenty-four (24) hours' notice prior to a Site Inspection during wet weather, and seventy-two (72) hours' notice prior to a Site Inspection during dry weather. Notice will be provided by electronic mail. During the Site Inspection, Defendant shall allow Plaintiffs and/or its representatives access to the Facility's SWPPP, storm water monitoring records, and nonprivileged reports and data related to storm water monitoring at the Facility. During the wet weather Site Inspection, Plaintiffs' representatives may collect samples of storm water discharges. Plaintiffs shall be permitted to take photographs and/or video recording during any Site Inspection pursuant to this paragraph. If Plaintiffs take photographs and/or video recording, Plaintiffs shall provide Defendant with the photographs and/or video within fourteen (14) calendar days after the Site Inspection.

## VI.   PAYMENTS

26. **Environmental Benefit Payment ("EBP").** In recognition of the good faith efforts by Defendant to comply with the General Permit and the Clean Water Act and in lieu of any payment that could have been assessed as a penalty if the matter were tried, Defendant shall pay the sum of sixty thousand dollars ($60,000) to the firm of Nelson, Pope & Voorhis, LLC, for the provision of stormwater management planning services

and development of a final Water Quality Improvement Plan ("WQIP") engineering report for the Hackensack River basin to be submitted to the Town of Clarkstown and the Stormwater Consortium of Rockland County. A copy of the WQIP report will be provided to Defendant when finalized. The check shall be made payable to "Nelson, Pope & Voorhis, LLC," and sent to Nelson, Pope & Voorhis, LLC, c/o Carrie O'Farrell, 70 Maxess Road, Melville, NY 11747. The memo section of the check shall reference "Hackensack WQIP." The payment shall be sent via certified mail, or similar service with tracking, within seven (7) business days of the Effective Date. Defendant shall concurrently notify Plaintiffs that payment has been sent and provide the tracking number, in writing. None of this payment shall be disbursed to Plaintiffs.

27. **Fees, Costs, and Expenses.** Defendant shall pay a sum of ninety-five thousand dollars ($95,000) as full and complete satisfaction of Plaintiffs' claims for attorneys' fees and costs incurred to date, including investigative and expert costs. The payment has been placed in escrow with Defendant's attorney and will be sent to Plaintiffs' attorney via certified mail, or similar service with tracking, within seven (7) business days of the Effective Date. Defendant shall concurrently notify Plaintiffs that payment has been sent and provide the tracking number, in writing. The check shall be payable to "Super Law Group, LLC Attorney Trust - IOLA". Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Plaintiffs.

28. **Compliance Oversight Fees and Costs.** Plaintiffs will incur costs in order to monitor Defendant's compliance with this Decree. To help defray these costs, Defendant agrees to pay up to ten thousand dollars ($10,000). $10,000 will be placed in escrow with Defendant's attorney within sixty (60) days after this Decree is executed by the parties, and will be transferred to Plaintiffs' attorney within seven (7) business days of the Effective Date. The check shall be payable to "Super Law Group, LLC Attorney Trust - IOLA". Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Plaintiffs. Plaintiffs or their attorneys shall present to Defendant an invoice for any payment they propose to take from this sum to cover compliance oversight fees and costs. Defendant shall have two weeks from receipt of any such invoice to object to the sum claimed. If Defendant does not object, Plaintiffs' attorneys shall draw down the trust account to pay the proposed sum. If Defendant objects, the Parties shall follow the Dispute Resolution Procedure set forth in Section X. Any funds not used during the Term of this Decree shall be returned to Defendant.

## VII. EFFECT OF DECREE

29. **Plaintiffs' Release of Liability.** Upon Court approval and entry of this Consent Decree, Plaintiffs covenant not to sue and release Defendant Seneca Meadows, Inc. (including its representatives, assigns, agents, employees, officers, attorneys and consultants) from any and all claims, causes of action, or liability related to stormwater at the Facility under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, or any other claim or relief (a) relating to or resulting from noncompliance with the Clean Water Act occurring prior to the Termination Date, and (b) for any past violations of the Clean Water Act at the Facility alleged, or that could

have been alleged in the Complaint. This Paragraph does not constitute a waiver or release of any claims relating to the enforcement of this Decree.

30. **Reservation.** Plaintiffs do not waive their rights to bring a future action for injunctive or declaratory relief, penalties, and attorneys' fees and costs based on stormwater discharges that occur after the Term of this Decree.

31. **Defendant's Releases of Liability.** Defendant releases and discharges Plaintiffs and their representatives, assigns, agents, employees, officers, attorneys and consultants, including those who have held positions in the past, from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with this action.

32. **Compliance with Law.** Plaintiffs do not by consent to the Decree warrant or aver in any manner that Defendant's compliance with this Decree shall constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligations of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

33. **Impossibility of Performance.** Where implementation of the actions set forth in this Decree within the agreed deadlines becomes impossible, despite the timely good faith efforts of the Parties, the Party who is unable to comply shall notify the others in writing within seven (7) days of the date that the failure becomes apparent and shall describe the reason for the non-performance. The Parties agree to meet and confer in good faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of one of the parties, new performance deadlines shall be established. If the Parties cannot timely agree upon the terms of such a stipulation, either shall have the right to seek intervention of the Court.

## VIII.   FEDERAL REVIEW OF DECREE

34. **Review by United States.** The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Decree by the Attorney General of the United States and the Administrator of the EPA. Therefore, upon signing of this decree by the Parties, Plaintiffs shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5. If for any reason the United States should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Decree raised by the United States.

35. **Entry of Order.** Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties shall move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to

continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## IX.   MODIFICATION AND ENFORCEMENT OF DECREE

36. **Modification in Writing.** This Decree may be modified only upon written consent of the Parties and the approval of the Court.

37. **Continuing Jurisdiction of the Court.** The United States District Court for the Southern District of New York shall retain and shall have jurisdiction over the Parties to this Decree for the resolution of any disputes that may arise under this Decree. This Court shall also allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree.

## X.   DISPUTE RESOLUTION PROCEDURE

38. **Meet and Confer.** Except as specifically noted herein, any disputes with respect to any of the provisions of this Consent Decree shall be resolved through the following procedure. The Parties agree to first meet and confer (telephonically or via video) in good faith to resolve any dispute arising under this Consent Decree within thirty (30) days of receiving written notification of a request for such a meeting. During the meet and confer proceeding, the Parties will discuss the dispute and make reasonable efforts to devise a mutually acceptable plan, including implementation dates, to resolve the dispute. The Parties may, upon mutual written agreement, extend the time to conduct the meet and confer discussions beyond thirty (30) days.

39. **Settlement Meeting/Motion.** In the event that such disputes cannot be resolved within twenty-one (21) days of the Parties meeting and conferring, the Parties may agree to seek a settlement meeting before the Magistrate Judge assigned to this action. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, or are unable to obtain a settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court. The motion shall set forth the nature of the dispute and a proposal for its resolution.

40. **Fee Awards.** In resolving any dispute arising from this Agreement, the Court shall have discretion to award attorneys' fees and costs. The relevant provisions of the Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Court.

## XI.   MISCELLANEOUS PROVISIONS

41. **Entire Agreement.** This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements, and understandings, whether oral or written, among the

Parties.

42. **Notices.** Any notice, demand, copies of documents, or other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing. Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given: (a) if delivered by courier, when actually received or refused by the addressee; (b) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs; or (c) if e-mailed, when acknowledged by the addressee. Each Party shall promptly notify the other Party of any change in this contact information, including but not limited to a change in representation.

| Notices for Plaintiffs shall be sent to: | Notice for Defendant shall be sent to: |
|---|---|
| Douglas Chermak<br>doug@superlawgroup.com<br>Super Law Group, LLC<br>110 Wall Street, 3rd Floor<br>New York, NY 10005<br><br>Notices sent to the individuals listed above at the address listed above shall be deemed as notice to all Plaintiffs. | Michael G. Murphy<br>mmurphy@bdlaw.com<br>and<br>Megan R. Brillault<br>mbrillault@bdlaw.com<br><br>Beveridge & Diamond PC<br>477 Madison Avenue, 15th Floor<br>New York, New York 10022<br><br>Notices sent to the individual listed above at the address listed above shall be deemed as notice to Defendant. |

43. **Authorization.** Each person signing this Decree represents and warrants that they have been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

44. **Successors and Assigns.** This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

45. **Transfer of Ownership.** Defendant shall notify Plaintiffs prior to any transfer of ownership or control of the Facility to an entity that is not a corporate affiliate of Defendant. Defendant agrees that as a condition of transfer of ownership or control of the Facility, the new owner or operator shall be informed in writing of this Decree and of its requirements to comply with the Clean Water Act.

46. **Interpretation.** The provisions contained herein shall not be construed in favor of or against any Party because that Party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the

contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto. The language in all parts of this Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

47. **Headings.** The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

48. **Counterparts.** This Decree may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. The Parties authorize each other to detach and combine original signature pages and consolidate them into a single identical original. Any one of such completely executed counterparts shall be sufficient proof of this Decree. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this Decree. Copies of the original Decree, whether transmitted by facsimile or other means, shall be effective.

49. **Severability.** In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50. **Changes to the General Permit.** Defendant will comply fully with the General Permit and any permit modification, individual permit, or General Permit reissuance applicable to storm water discharges at the Facility during the Term of this Decree. If new or revised benchmark monitoring cutoff concentrations or effluent limitations (numeric or non-numeric) become applicable, compliance with them is required.

*(Remainder of page intentionally left blank)*

Dated: 9.21.22

Seneca Meadows, Inc.

By: John M. Perkey
Title: Vice President, Deputy General Counsel –
Compliance and Government Affairs


Dated: September 30, 2022

Hackensack Riverkeeper, Inc.

By: Michele Langa
Title: Staff Attorney


Dated: _____

New City Neighborhood Association, Inc.


By: Z Halo
Title: President


ENTERED and DATED this 30th day of September, 2022


Honorable Kenneth Michael Karas
United States District Judge

13

Dated: 9.21.22

Seneca Meadows, Inc.

By: John M. Perkey
Title: Vice President, Deputy General Counsel –
Compliance and Government Affairs

Dated: _____

Hackensack Riverkeeper, Inc.

_____
By: Michele Langa
Title: Staff Attorney

Dated: 9-30-22

New City Neighborhood Association, Inc.

_____
By: Z Halo
Title: President

ENTERED and DATED this ___ day of _____, 2022

_____
Honorable Kenneth Michael Karas
United States District Judge

13

# APPENDIX A: SCHEDULE

## Additional Control Measures (Section III of Consent Decree)

| Requirement | Deadline |
|---|---|
| 1. Implement a weekly inspection and maintenance schedule to verify that the filter socks surrounding the catch basins are properly situated and to replace them as needed. Where feasible, inspections shall also be conducted in conjunction with heavy rainfall events. Defendant shall maintain a log of such inspections. | Effective Date + 30 days |
| 2. Implement a monthly inspection of the sanitary holding tank to ensure that it is not overflowing. Defendant shall maintain a log of such inspections. | Effective Date + 30 days |
| 3. Maintain a log in the Facility's office of daily sweeping activities or reasons that sweeping was not completed on any particular day. | Effective Date + 30 days |
| 4. Conduct hydrojetting of all subsurface stormwater conveyances at the Facility at least once per calendar year. When performing, ensure that no water from the process be discharged offsite. | Effective Date + 365 days |
| 5. In two unpaved areas at the Facility, pave or apply gravel as depicted in Appendix B. | Effective Date + 30 days (subject to reasonable extension based on weather conditions) |

*The Effective Date is the date this Decree was entered by the Court.

## Other Requirements
(collected here for convenience only, provisions of agreement above control)

| Requirement | Section | Deadline |
|---|---|---|
| Confirm implementation of measures in Appendix A | III | Within two weeks of installation of measures |
| Amend SWPPP (including site map); Provide copy | III | Effective Date + 30 days; + 10 business days |

14

| | | |
|---|---|---|
| Collect and analyze roof discharge; Provide copy | IV | Effective Date + one year; +30 days |
| Collect quarterly storm water samples during period of July 1, 2022, through June 30, 2023. | IV | June 30, 2023 |
| Analyze storm water samples for human bacteroides | IV | June 30, 2023 |
| Provide Plaintiffs with inspection records and sampling results | IV | By August 1 following applicable yearly period of July 1 through June 30 |
| Provide Plaintiffs with agency correspondence and documents | IV | By August 1 following applicable yearly period of July 1 through June 30 |
| Prepare and submit Action Plan | V | By August 1 following applicable yearly period of July 1 through June 30, if required |
| Payments | VI | Effective Date + 7 days |

# **APPENDIX B: SITE MAP**

**APPENDIX B: SITE MAP**

